The next case is 18-6007 N. Ray Johnny M. Belew etc. Bianca Rucker v. Johnny M. Belew Next case is Belew v. Rucker. Charles Coleman v. Appellant First, I would like to thank you all for coming to Little Rock to hear this case. The last hearing, the fact hearing of this case, was on February 27th. And here we are with an oral argument for the fact on August 2nd. That timing is amazing in my experience. I've been able to take the case on appeal and get an oral argument within that amount of time. And so I thank the court for that. On behalf of the appellant of Little Rock, Justice Scalia expressly and concisely stated the issue in Law v. Siegel to be with the bankruptcy court before the debtor's exempt assets be used to pay the administrative expenses incurred as a result of the debtor's misconduct. In that case, no party had objected to the debtor's claimed exemptions. And the exemptions were allowed as claimed. Later, as a result of the debtor's bad acts, bad misconduct, the trustee was attempting to recover his administrative expenses by going to the only source he had that he could find, and that was the debtor's exempt assets. And so, creatively, the trustee was attempting to surcharge those assets. And, of course, we know, Justice Scalia and the Supreme Court said no. This case presents a totally different issue. That is whether the debtor has the unlimited, unfair right to file an amended schedule of exemptions without regard to bad faith for all the prejudice of creditors. And there's a second issue of whether, in this case, the trustee established the predicates to sustain her objection to this specific exemption claim under Section 522G. Okay, let me stop you there because that's one of the questions I have about where we are with the procedure. I did not see in the trustee's objection or in the closing argument any reference to 522G. Was that issue raised before the bankruptcy court? Judge, you're correct. The words 522G were never mentioned. However, there was mention, objection to the exemptions, that these funds were voluntarily transferred by the debtor, by Mr. Ballew, to his wife. There was all kinds of testimony about the debtor's concealment of those assets that he put them in, transferred them to his wife and put them in a safe in the closet. And then when he filed the bankruptcy, they were not scheduled. They weren't mentioned in the first meeting, so they were concealed. And then they were turned over, pursued to an order. So you're saying the elements of 522G were argued and brought to the bankruptcy court, and you just didn't mention that it was under 522G? That's exactly right. Just like – Let me jump back in because of my conspiratorial concern because I'm also – all of us are also autopsy and trial court judges and have cases pertaining to us. And if the case is presented to me and one of the supposed branch for relief is a code section that is never mentioned during the proceeding before me and is never argued as the grounds for relief, I'm a little bit troubled by the assertion that because everything's in there, if you just sort of sit through it carefully enough, you can put together a 522G claim. How does it fare with the bankruptcy court for you to be arguing to us that 522G was for the trustee relief when that was never argued to the bankruptcy court in the first instance? I understand, Your Honor. Law versus single wasn't mentioned to the trustee either. The trustee did not have a chance at the trial level to respond to the law versus single order. That's a good point, Your Honor. They didn't even raise 522G. I didn't think that it did because I have bad faith all over it. It's pretty plain here, Your Honor. You're just trying to ridicule the case for bad faith and misunderstanding. I'm trying to focus on what we're appropriately going to consider. And one of our cardinal rules is we don't consider arguments that were raised in the bankruptcy court in the first instance. Now, the bad faith issue, that's for the record, I'm not in favor of any more discussion of the bad faith. But the point is not me, Your Honor, because of bad faith. I am seriously concerned about the 522G argument. The trustee did not mention 522G. She did argue the elements, but she did not mention 522G. When you say she argued the elements in the argument, you don't have a big argument, but I want to be very precise here. She didn't argue the elements of 522G. She argued things that could be constructed into the 522G argument. Would that be more fair to say? I think it's a matter of interpretation, but she was objecting to the exit. Not only was she objecting to the fact that the debtor was filing an amended claim of exemptions when there was bad faith and that there was prejudice to creditors, but she was objecting to claiming the cash as exempt. And on the basis that she was objecting to the specific fact that the cash was being claimed as exempt. And in the Cayman case, the 8th Circuit Cayman case, that is following the briefing, Judge Malloy pointed out that there are two issues here. The first issue is, does the debtor have the right to amend the schedules procedurally under 109A? And if the debtor does have the right, then are the amended exemptions that are claimed in conformity with 522? Is there an objection under 522? That's what Judge Malloy, that's what the 8th Circuit panel in the Cayman case ruled. Consistent with so many other courts, including some of your decisions, have held that the right to amend under 109A is not absolute but is subject to the court's discretion in the event the amendment is proposed in bad faith or prejudice purgatory. So do we treat the amendment to Schedule C as a motion to amend then that needs to be addressed? You amend Schedule AB to include the asset so that it's disclosed. And then under 109A, the debtor is allowed to amend Schedule C. When an amendment to Schedule C is filed, is that final subject to objection or is it just classified as an amendment to amend Schedule C? Well, I think we know that if the debtor amends the schedule to claim additional exemptions, and if it's not objected to, then the exemptions are deemed allowed, and then he probably won't subject. That's the one thing I'm thinking about, is when you make a motion to amend a complaint or a motion to amend in a different type of setting, that's a motion to amend that can be objected to. Is that really what we have here as opposed to the exemption issue? I think that's what we have. I think it's not filed as a motion, but I believe that based on the rules and based on the way the courts have interpreted them, it's, in essence, a motion to amend. And if nobody objects, the motion is granted. Similar to the local practice here in Chapter 75 of the Motion for Lincoln State, the court issues a negative notice when nobody objects, the motion is granted. There's not a negative notice in this context, but if no one responds to the amended claim of exemptions, they are deemed allowed. But under the case law, that it is subject to bad faith and prejudice to predators. In the post-sequel case of Enrique Ventura, out of the Northern District of Iowa, bankruptcy court, and that was not Judge Shuleen's case, the bankruptcy court ruled that the right to amend exemptions under 109A is subject to bad faith and the prejudice to predators exception. In that case, it's important to note that the trustee, at the time of the exemption, amended exemption, the trustee had already sold the asset that the donor was intending to claim as exempt in the court. I see that, and the court denied the amendment. And that demonstrates the problem with interpreting Law v. Siegel as having an unlimited right, an unfettered right to amend the exemptions. Because the debtor can amend the exemptions all through the case, and there's no limitation on them. Who's to say in this particular case that the debtor's not going to go out and he gets the cash now, $15,000, and it's exempt? He goes out and spends the cash, and then six months later he wants to move in again and claim other assets. And we could always file a motion to dismiss or object to his discharge, but that's probably run. And so then you have a debtor out there who's under the protection of the court, has spent all his money, and the creditors are at a loss. And he's made a mockery of the court, made a mockery of the bankruptcy code, and the bankruptcy system. I'll pass the floor away to him. Thank you. Mr. Gertzer. Good morning, Martins. Thank you for hearing us today. I think before this panel is a very important issue. I am a consumer bankruptcy attorney. I do Chapter 7s and Chapter 13s and Chapter 12s. I don't represent creditors. I don't represent anybody in Chapter 11s. And so this is what I will tell you from my practice. I've been doing nothing but consumer bankruptcy law for 10 years. Last year, in 2017, I filed 92 cases. I'm not a volume filer. I don't advertise. But in 92 cases, 52 of which were Chapter 7s, I spent on average about four hours with each debtor before we filed bankruptcy petitions. But notwithstanding that, in general, in practice, there will be times when a consumer debtor fails to disclose something on Schedule B because they just missed it. It was inadvertently omitted. For instance, just recently I had a debtor tell me that he had no idea that a non-investment stock option would be something that he would list on Schedule B. A non-investment stock option is a whole lot different than $30,000 in the closet council. And I guess the bankruptcy judge didn't have an opportunity to make any credibility finding or didn't, I should say, make any credibility finding, which is really what that goes to. Isn't that correct? I mean, we don't have a decision about his thoughts on that issue. Correct, Judge. The court, after hearing almost two days of testimony with the debtor being on the stand for hours being questioned, the judge made no finding as to good faith or bad faith. And the documents filed, the brief, and so forth, almost assumes bad faith in the statements that there absolutely is bad faith. Mr. Fitzgerald, we all recognize this case does not really indicate whether a debtor has a right to amend or not amend. But in more cases, does law versus legal apply? And that's essentially what the eight columns are. So let's go there. Yes, Your Honor. First of all, I will tell you that the day I tried this in the bankruptcy court, I did not know that law v. legal existed. I told after Judge Berry issued his order and we prevailed, I told my debtor that it should fire me because I did not know what to argue that law v. legal even existed. But now I do. And law v. legal seems to leave no open door for somehow a, under what the court's 105 powers, carve out an exception to the right to exempt property that is not in 522. But I don't know. Yes, sir. Mr. Sullivan's under there. Because obviously, like Judge Sullivan said, the bankruptcy court did not make findings of bad faith or appropriation. So we don't know if the bankruptcy court would have thought about compliance, credibility, whether this was an honest mistake, such as an uninvested pension, or if it was $30,000 cash in the safe in the house. I mean, having a difficult time to leave the house to create $30,000 in cash in the safe in my house. But it could happen. But we're not making credibility. But we're not there. So what it comes to me is, is your argument that under law v. legal, even if the bankruptcy court had found that your client, again, no such findings were made, if the bankruptcy court had found that your client did act in bad faith, did know about the cash in the safe, intentionally withheld knowledge of that cash in the safe, and intentionally misled you, the trustee, the court, if all of that were found by the bankruptcy court, is that your position under law v. legal, there's nothing that can be done about it in terms of his finding those funds examined. He can do all of that. He can admit after he's discovered. He can claim an exemption. And there's nothing that can be done about it for bankruptcy court with respect to that claim of exemption. Your Honor, I do believe that on multiple meetings of law v. legal since the decision of Jim Berry, that that is what law v. legal would teach or hold. The appellant does their best to carve out that there's a difference between objecting to an amended claim of exemption and the equitable surcharge. Let me just, to me there is a distinction because in law v. legal, the exemption had become final and the debtor had an interest in the property. In a situation for us, the cash is property of the estate. And I think what the appellant is arguing is it's the ability to amend Schedule C to claim that it's exempt, which is eviction. And until that exemption is decided, isn't that something that's subject to the court's jurisdiction under 522? And Judge, my response would be that the U.S. Supreme Court looked at a fact pattern that was egregious and said your exemptions are sacrosanct. But then he has no objection to that. There was no objection to the exemption claimed in law v. legal. But Judge Scalia for the court brings that issue up a couple different times in the decision and says that even if this was an objection to exemptions on an amendment, we see no difference. Now, the appellant has to argue that that's dicta, that that's not the foreholding. I counted the number of times that surcharge or equitable surcharge appears in that opinion. It appears nine times. The number of times exemption or exempt appears is 49 times. This is clearly an opinion about the impenetrability of the exemptions that Congress allowed in the statute. So let's see if I can get back on track here. I guess the, where I was going with my initial statements about there will be mistakes from time to time in consumer debtors bankruptcy schedules. I think that it is important to remember that there is a disparity of ability for a trustee and in some events an overly aggressive Chapter 7 trustee to object to amended exemptions. Because that puts a debtor in a very difficult position. Usually, Chapter 7 debtors are without a lot of resources. I told my clients this one time in life where it was good to be dirt poor and most of them are at the time they file Chapter 7. And if somebody had omitted, maybe my non-investment stock option is an extreme example, but there would be other things that sometimes a very honest debtor might not disclose and need to amend to add. At that point, if the trustee can object to those exemptions, that's easy for a Chapter 7 trustee to do. I'm a little confused by what happened in this case. Because if you're arguing that Mr. Blue is an honest debtor, which is fine because you haven't heard the complete evaluation. But then why did he give only half the money? I mean, is it all his? Is it all his wife's? I guess I'm confused as to how you came up with that turnover. Was that really an ocean of compromise that just didn't get finalized? Not exactly. This is a second marriage for both of them. They have not been living together. I'm just asking why you turned over $15,000 to the bankruptcy trustee as opposed to nothing, or as opposed to $30,000. It would be our position that Mr. Blue is the one who shined a light on this home-safe cash when he realized and remembered at 70 years of age that the genesis of the cash had something to do with his income from two or three years ago that was deposited into a bank account. And it was a bank account that then was closed one to two years before the bankruptcy was filed. So what we disclosed your honor, I'm sorry to interrupt you. So by turning over $15,000, is that an admission that that belongs to the estate and it's not exact? What it is an admission of is that the amount of money in that home-safe that was attributable to him versus the amount of money that was attributable to his wife were indeterminate. And so since it was indeterminate, the amended Schedule B says we don't know what portion is his, what portion is hers, so we're just going to cut it in half. On the day the bankruptcy petition was filed, it was $30,000, so we're going to say it was unknown, but $15,000 is half of it. And so we're going to disclose $15,000 and amend her to exempt her with what was left in the D-5, which was $12,000 and change. So it would be beyond the ability to determine what part of that $30,000 that was in the home-safe was attributable to her private source of funds before they were married and what source was attributable to his. So my question is, is he admitting that $15,000 is not exempt? I'm sorry, but I didn't get that part. So we're going to get back to Law B. Siegel for a minute. I'm sorry. I think that's what this case determines. So it's your position Law B. Siegel applies the better thing, and then it schedules regardless of any fraud, intent, concealment, et cetera. How does, in your mind, 522G fit in all of this? Because didn't Law B. Siegel say the bankruptcy court can't use its inherent powers or equitable powers to withhold the exemption, but it can only use whatever is based in the statute and isn't 522 based in the statute? In 522G, it appears not to be appropriate in this case because the 522G predicate is that the trustee recovered funds under certain code sections. And it would be the appellee's position here is that this was an effort to show good faith here. We don't know how much of this $30,000. The trustee asked about it, right? Pardon me? The trustee never asked about home safe cash. The trustee had no idea that there was home safe, home safe cash. The trustee was doing a really good job, due diligence, looking at the whole of Mr. Ballew's world. But the trustee had no idea that there was home safe or home safe cash until the day the schedules were – amended schedules were filed. And subsequently, had a deposition with Green that – Unless the trustee chased the $30,000 withdrawal at the time, trying to figure out where the money went. No, Your Honor. No, Your Honor. That was the impression that Green seeked. Yeah, it's absolutely – That's not correct. That's not correct. There was no $30,000 withdrawal. On the subject of the 522G, if I may ask, Mr. Ballew, my last speech was the objection based on the 522G, right? No. The – the – the trustee's objection? Correct. The objection was – Was there any reference to – No. Both the trustee and I both tried the whole case on Henry Kalin. I was so armed with my Henry Kalin knowledge that, you know, it makes me sick. But – and I missed the whole point. So, the 522G was not tried at the hearing. I'm not sure what you're looking like. You're the kid. Yeah, you're like mildly smiling. Something means something, I guess. All right. Thank you. Appreciate it. Thank you, Your Honor. Thanks. We're calling it in again real time. What time is it? About 337. Thank you, Your Honor. The record will speak for itself. I believe that a debtor took money out of the $30,000 – I want to say cash – to pay his bankruptcy loan. So, just remember you put it on your schedules and you – it seems to be those facts. It affects credibility. There is no credibility to find. Going back a little more succinctly, those portions of Justice Scalia's opinion relating to the objections to exemptions were not necessary to the court's ruling on the surcharge issue that was before this Supreme Court. The issue in this case is procedural. It's the procedural motion to amend – it's not filed as a motion – but the procedure of amending the schedules to claim additional exemptions. Does 522G have to be raised as an objection to the exemption or can it come up later? Like, if we just found out about the cash and then we're going to pursue fraudulent transfer, is there a particular timeframe in which that has to be raised? I believe 522G objection has to be filed within 30 days of the conclusion of the meeting of the creditors or 30 days after the – any amendment. And that raises an interesting issue that we believe is applicable. If the – if we have the right, which we believe we do, to object to amended schedule of exemptions on the basis of bad faith, that's issue number one. And then if that issue is – if that motion is granted and that the debtor does have the right to amend the schedules, then we should have an opportunity to look at the specific exemptions that have been claimed, new exemptions, only the new exemptions claimed, and file a 522G objection to that. So you're saying it's a two-step? It's a two-step. And that's what Judge Malloy said in the Kaling case. And I don't – I guess someone might say Law v. Siegel does away with that. We think that the Kaling case is procedural. If the Supreme Court of Siegel had intended to address the trustee's right to object to the debtor's claimed exemptions on the basis of fraud, the court would have mentioned 4003B2. And 4003B2 specifically says the trustee has the right to object to exemptions on the basis of fraud up to one year after the debt is closed. So the Supreme Court approves a bankruptcy rule giving the trustee the authority to do that. And then the argument is, based on Law v. Siegel, that a trustee does not have the right to object to exemptions based on fraud. It makes no sense to interpret Law v. Siegel that way in view of the Supreme Court's own bankruptcy rule, 4003B2. Thank you. Court will be in recess until further notice.